**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **BRITTANY ATES,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:24-cv-00201-TES** |
| **GOVERNMENT EMPLOYEES INSURANCE COMPANY, INC.,[1]** | |
| *Defendant.* | |

**ORDER**

Plaintiff Brittany Ates, an African-American woman, worked for Defendant Government Employees Insurance Company, Inc. ("GEICO"), as a Salvage Specialist until December 5, 2023.[2] [Doc. 3, ¶ 9]. Before she left GEICO, Plaintiff alleges that she experienced "continuous racial slurs, public shaming, and derogatory remarks about her race by her coworkers and supervisors." [*Id.* at ¶ 10].

Initially, Jordan Story, a white woman, supervised Plaintiff. [*Id.* at ¶ 11]. During her time as Plaintiff's supervisor, Story made "multiple racist comments and publicly shamed [Plaintiff] on numerous occasions." [*Id.* at ¶ 12]. By way of example, Plaintiff contends that during a celebration involving two teams of GEICO employees, Story

---

[1] The Clerk is **DIRECTED** to correct the case caption pursuant to Plaintiff's Amended Complaint naming Government Employees Insurance Company, Inc. in place of GEICO Insurance Agency, LLC.

[2] Plaintiff does not allege when she started working for GEICO.

"addressed [Plaintiff] and her predominantly African-American team as the 'ghetto team.'" [*Id.* at ¶ 13]. Even more, Story told Plaintiff and others that she "does not associate with the ghetto." [*Id.* at ¶ 14]. At a different office gathering, Story referred to chocolate cupcakes as "black cupcakes" and said, "We don't eat anything from the ghetto." [*Id.* at ¶ 15].

Aside from those remarks, Story also "consistently only disciplined black employees for having conversations on the job" when she wouldn't discipline white employees for the same conduct. [*Id.* at ¶ 17]. And, if a "black person [spoke] to someone on Story's team, she would state, 'we don't associate with the ghetto.'" [*Id.* at ¶ 18].

Plaintiff reported Story's conduct to Anita Sanders—an employee with GEICO's Human Resources department—"detailing the use of racial slurs and the term 'ghetto' in reference to her and her team." [*Id.* at ¶ 19]. Since Plaintiff didn't receive a response to her initial HR complaint after two weeks, she reached out again, as "Story's racist behavior toward her was ongoing." [*Id.* at ¶ 21]. HR then acknowledged the complaints, and advised Plaintiff that "an investigation would be conducted." [*Id.* at ¶ 22]. Following the investigation, GEICO reassigned Plaintiff to another supervisor, but Plaintiff still interacted with Story as a part of her job. [*Id.* at ¶ 23]. During those continued interactions, Story continued to make racist and demeaning comments to Plaintiff. [*Id.* at ¶ 24]. Eventually, Plaintiff resigned. [*Id.* at ¶ 25].

Plaintiff then filed a charge with the Equal Employment Opportunity Office on August 12, 2023, and received a right-to-sue letter on March 28, 2024. [*Id.* at ¶ 4]. Plaintiff filed the instant action on June 26, 2024, bringing four claims. *See generally* [Doc. 1]. Plaintiff filed the operative Amended Complaint [Doc. 3] on August 1, 2024.[3] First, Plaintiff alleges race discrimination claims in violation of Title VII and 42 U.S.C. § 1981. Second, Plaintiff contends GEICO retaliated against her also in violation of Title VII and § 1981. [*Id.*]. In response, GEICO filed the instant Motion to Dismiss [Doc. 7], arguing Plaintiff's Amended Complaint [Doc. 3] should be dismissed for failure to state a claim.

## SHOTGUN PLEADING

The Court must first note that Plaintiff's Amended Complaint is a shotgun pleading. So far, the Eleventh Circuit has identified four types of "shotgun pleadings." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019). Such complaints are characterized by:

> (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Id.* Of these, "[t]he most common type" of shotgun pleading "by a long shot[,] is a complaint containing multiple counts where each count adopts the allegations of all

---

[3] Plaintiff's Amended Complaint is essentially the same except, as discussed above, a change from GEICO Insurance Agency, LLC to Government Employees Insurance Company, Inc. [Doc. 3, p. 1].

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). To explain the Court's concern with Plaintiff's Amended Complaint as drafted, the inherent issue in this type of pleading is that the district court, as well as all named defendants, must "cull through [all factual] allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim." *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

The burden to draft a rule-compliant, comprehensible pleading rests solely upon plaintiffs. *Bryant v. Norfolk S. R.R.*, No. 5:20-cv-00225-TES, 2020 WL 5521044, at *5 (M.D. Ga. Sept. 14, 2020). The onus to "sift through facts presented" to determine which factual allegations apply to which claims should never fall to a defendant or to a district court. *Id.*; *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1385 (11th Cir. 2020) ("It is not the proper function of courts in this Circuit to parse out such incomprehensible allegations, which is why we have stated that a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading."); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 & n.22 (11th Cir. 2010) (Tjoflat, J., concurring) ("The complaint was a typical 'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that

many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading."). While the Court does not strike Plaintiff's Amended Complaint, it does note that Plaintiff made the Court's (and GEICO's) job notably more difficult.

## LEGAL STANDARD

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. 544, 572 (2007). In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. 662, 678–79 (2009)).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

To decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow [it] to reasonably infer that [a] plaintiff [may be] entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case, critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

The Court begins by clearing up the actual claims in this case. While Plaintiff's "Nature of Complaint" mentions the "hostile work environment" she faced as a GEICO employee, there is no separate count for a hostile work environment claim. Even if Plaintiff's other claims "contain[] sufficient factual allegations on which to base a plausible hostile work environment claim," she did not "articulate that [s]he was making that claim" by making it "a separate count so that [GEICO could] discern what [s]he is claiming and frame a responsive pleading." *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011); *Copeland v. Georgia Dep't of Juv. Just.*, No. 7:12-CV-24 HL, 2013 WL 1296778, at *13 (M.D. Ga. Mar. 27, 2013) ("A hostile work environment claim stands on its own. The Court and opposing parties should not have to guess whether a hostile work environment claim is hiding in a discrimination count. Plaintiff should have articulated a separate count in her complaint alleging the hostile work environment claim."); *Sanchez v. Cherokee Brick & Tile Co.*, No. 5:23-CV-00072-TES, 2023 WL 3919540, at *5 n.6 (M.D. Ga. June 9, 2023); *cf. Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1355 (11th Cir. 2024) ("At the outset, we emphasize that substantive hostile-work-environment claims are distinct from retaliatory hostile-work-environment claims

and should be pled in separate counts. As many plaintiffs do, Terrell pled both claims in one count of her complaint. But the two causes of actions have different elements and different standards of proof. Accordingly, the two causes of action should be pled in separate counts.").[4] Therefore, to the extent Plaintiff intended to raise a hostile work environment claim, she did not properly do so, and the Court will not consider it.

Even assuming, *arguendo*, that Plaintiff did somehow state a separate claim for hostile work environment, her Amended Complaint does not sufficiently allege facts to support one. Indeed, such a claim generally requires a plaintiff to show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) there is a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). As to the severe or pervasive requirement, courts evaluate four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is

---

[4] This is not a hard-and-fast rule without exceptions. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1246 (11th Cir. 2004) (finding a plaintiff sufficiently alleged a hostile work environment claim under the umbrella of a Title VII count where she alleged "[t]he harassment suffered by the plaintiff was sufficiently severe, pervasive, and extreme so as to alter the terms and conditions of her employment."). But Plaintiff didn't even mention any of the key terms associated with a hostile work environment claim, and the word "hostile" only appears once in Plaintiff's Amended Complaint. [Doc. 3, ¶ 1].

And, keep in mind that Plaintiff is represented by counsel, which means she cannot avail herself of the lower-pleading standards to which courts hold *pro se* litigants. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *DeFina v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1977) ("A complaint drawn by a lawyer is properly held to a higher standard than one drafted by a layman.").

physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1246.

Here, Plaintiff relies on three-to-four instances[5] of Story's use of the term "ghetto." *See, e.g.*, [Doc. 3, ¶¶ 13, 14, 15, 18]. But that isn't enough. District courts in this Circuit have concluded that "[h]owever offensive the term, a single or *occasional* use of a racial epithet is not sufficient to qualify as objectively severe or pervasive conduct." *Gant v. Kash n' Karry Food Stores, Inc.*, No. 807-CV-2086-T-33EAJ, 2009 WL 2163111, at *5 (M.D. Fla. July 17, 2009) (emphasis added); *Bailey v. Final Touch Acrylic Spray Decks, Inc.*, No. 6:06CV-1578-ORL-19JGG, 2007 WL 3306749, at *6 (M.D. Fla. Nov. 6, 2007) (reviewing cases that find the term "ghetto" is not "severe" under a hostile work environment claim."). Indeed, the Eleventh Circuit clearly held "the mere utterance of

---

[5] Again, Plaintiff doesn't tell the Court how long she worked for GEICO. And, by omitting any reference to the relevant timeframe, she denied the Court the necessary factual tools to gauge whether she sufficiently alleged a hostile work environment. *See, e.g.*, *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (finding a hostile work environment claim where a plaintiff experienced ethnic slurs three to four times a day); *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (finding fifteen occasions of racial comments over four months sufficient).

Even more, Plaintiff's reliance on the term "continuous" is not enough to allege a claim, either. *Cf. Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (finding an assertion that a coworker "was always making racial slurs about minorities" constituted a "bald assertion and legal conclusion"); *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014) (granting a motion to dismiss where the plaintiff alleged "he suffered a persistent pattern of severe and pervasive harassment" because such allegations were "bald legal conclusions"); *Webb v. Atlanta Indep. Sch. Sys.*, No. 115CV001613RWSWEJ, 2017 WL 4334246, at *2 (N.D. Ga. Jan. 18, 2017); *Einess v. Tresco, Inc.*, 44 F. Supp. 3d 1082, 1095 (D.N.M. 2014) ("She alleges that she was 'harassed and retaliated against by four male employees,' and subjected to 'constant harassment [and] retaliation' . . . These allegations, however, are legal conclusions designed to check off the elements of a retaliatory discharge claim, and not factual assertions, and the Court thus accords them no weight."); *but see Ross v. Cmty. Health Choice*, No. CV 09-1295, 2009 WL 10719758, at *4 (S.D. Tex. Aug. 20, 2009) (finding sufficient allegations where a plaintiff's complaint alleged "constant" epithets, because the plaintiff also included factual allegations claiming her coworker used the N-word daily).

an ethnic or racial epithet which engenders offensive feelings in an employee does not rise to a Title VII violation. For . . . harassment to state a claim under Title VII, it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir. 1982); *see also Harrington v. Disney Reg'l Ent., Inc.*, 276 F. App'x 863, 876 (11th Cir. 2007) (affirming a district court's finding that "being called 'ghetto' and once or twice overhearing co-workers being described as monkeys, was not pervasive enough to alter her conditions of employment").

Put another way, "[t]he offensive conduct, albeit rude and insensitive, is not actionable under Title VII, as it amounted to mere offensive utterances or general vulgarity that Title VII does not regulate." *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 296 (11th Cir. 2012). In fact, in *MackMuhammad v. Cagle's Inc.*, the Eleventh Circuit concluded that a Muslim man being called "Bin Laden" and "Muhammad-man" over the company intercom, combined with a manager's comments regarding the plaintiff's refusal to eat pork, and the intentional serving of pork products at work functions all did not constitute a hostile work environment. 379 F. App'x 801, 805 (11th Cir. 2010). Regardless, Plaintiff didn't properly place the hostile work environment claim in her Amended Complaint; therefore, no such claim exists in this case.

With that handled, the Court moves on to the claims actually alleged by Plaintiff: race discrimination under Title VII, race discrimination under 42 U.S.C. § 1981,

retaliation under Title VII, and retaliation under § 1981. Since Title VII and § 1981 claims are analyzed under the same standards, the Court combines the analyses. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) ("Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims.").

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employers are also prohibited from retaliating against "any . . . employee[ ] . . . because [s]he has opposed any practice made an unlawful employment practice" by Title VII, "or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* at § 2000e-3(a).

With all of that in mind, the relevant inquiry in assessing a complaint's allegations through a Rule 12(b)(6) lens is whether there is enough factual heft to nudge claims from the "conceivable" category to the "plausible" one. *Twombly*, 550 U.S. at 557, 570. To be consistent with *McCullough*'s two-step framework, the Court identified and discarded everything from Plaintiff's Amended Complaint and her EEOC charge that

amounts to nothing more than a conclusory allegation masquerading as fact. 907 F.3d at

1333. Then, with whatever *factual allegations* that remained, the Court, of course,

accepted those as true to determine whether they give rise to *plausible* claims that

"unlock the doors of discovery." *Id.*; *Iqbal*, 556 U.S. at 678–79. Remember, though,

pleading "a formulaic recitation of the elements of a cause of action" is never enough.

*McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555).

### I.    <u>Race Discrimination</u>

The Supreme Court's precedent is clear that "an employment discrimination

plaintiff need not plead a prima facie case of discrimination [under the *McDonnell*

*Douglas* framework] . . . to survive a motion to dismiss[.]" *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 510–11 (2002). "This is because *McDonnell Douglas*'s burden-shifting

framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin*

*Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). To elaborate on this point, the

Eleventh Circuit has held that "to state a [race discrimination] claim under Title VII, a

complaint need only 'provide enough factual matter (taken as true) to suggest

intentional ... discrimination." *Id.* (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516

F.3d 1239, 1246 (11th Cir. 2015)); *see Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201,

at *2 (11th Cir. Jan. 3, 2022) (stating that "[t]he pertinent question, as always, is whether

[plaintiff's] complaint provides enough factual matter (taken as true) to suggest

intentional . . .  discrimination[ ]"). Thus, Plaintiff need only allege facts sufficient to

state a plausible claim that GEICO violated Title VII. *See Jacob v. Biando*, 592 F. App'x 838, 840–41 (11th Cir. 2014). However, even under this rudimentary pleading standard, the Court cannot conclude that the factual allegations set forth in Plaintiff's Amended Complaint plausibly suggest discrimination because of her race.

Plaintiff's Amended Complaint—aside from alleging Story used the term "ghetto"—only alleges one act of disparate treatment. Namely, Plaintiff contends that "Story consistently only disciplined black employees for having conversations on the job; if two white employees were speaking casually, Story would not comment." [Doc. 3, ¶ 17]. However, Plaintiff failed to allege that **she** faced any discipline for speaking to another black employee or the specific discipline given[6] and her discrimination counts do not specify how Story or GEICO discriminated against her. *See* [*Id.* at ¶¶ 28–41].

Again, Story's use of "ghetto" is not enough to show disparate treatment. *See Grant v. Delco Oil, Inc.*, 259 B.R. 742, 751 (M.D. Fla. 2000) ("Even nasty racial statements made by a supervisor are no substitute for proof that non-minority, similarly situated employees were treated better than plaintiff."); *cf. Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1313 (11th Cir.), *vacated and superseded in part on denial of reh'g on other grounds*, 151 F.3d 1321 (11th Cir. 1998) (holding that race-based epithets do not replace

---

[6] Plaintiff attempts to change this allegation in her Response [Doc. 10] to GEICO's Motion by arguing "Ates has stated that only she and other black employees were disciplined for talking while on the job." [Doc. 10, p. 8]. However, a "plaintiff may not amend her complaint through argument in a brief[.]" *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

the need for a plaintiff to show "that nonminority, similarly situated employees were treated more favorably by her employer than she was treated").

Even more, Plaintiff's Amended Complaint alleges constructive discharge as her only adverse employment action. [Doc. 3, ¶ 25]. For constructive discharge, a plaintiff must show the "working conditions were so intolerable that reasonable persons in their position would have felt compelled to resign." *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1302 (11th Cir. 2005). Indeed, "[t]he plaintiff must do more than merely show that she was subjected to actionable harassment." *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1282 (11th Cir. 2003). That's because "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).[7] And, a "plaintiff's subjective feelings about her employer's actions are not considered; instead, the standard is whether a reasonable person in her position would be compelled to quit." *Williams v. Russell Corp.*, 218 F. Supp. 2d 1283, 1299 (M.D. Ala. 2002).

---

[7] Since the standard to allege constructive discharge is higher, Plaintiff's failure to establish a hostile work environment claim is fatal to her constructive discharge allegation, too. *See Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim."); *Bentley v. Baker*, No. 7:12-CV-132 HL, 2013 WL 3106658, at *5 (M.D. Ga. June 18, 2013) ("Thus, conditions that do not qualify as a hostile work environment are not sufficiently intolerable to force an employee to quit, which is necessary to establish a constructive discharge claim."); *Barreth v. Reyes 1, Inc.*, No. 5:19-CV-00320-TES, 2020 WL 4370137, at *13 (M.D. Ga. July 29, 2020) ("This 'higher standard' is not a pleading standard that entails some heightened level of fact-pleading like when pleading special matters under Federal Rule of Civil Procedure 9. Instead, it is merely a higher standard of law because establishing a constructive discharge claim is more onerous and requires showing an even greater level of severity or pervasiveness of harassment than is required for a hostile work environment claim.").

First, the Court already concluded that Plaintiff's Amended Complaint didn't state sufficient facts for a viable hostile work environment claim.[8] Even so, Plaintiff effectively "insists that so long as an employee can show that she was forced to leave because of the harassment she experienced, the employer is liable for any resulting discharge." *Walton*, 347 F.3d at 1282. But, "[a]ccepting that position would eviscerate the objective standard for constructive discharge." *Id.* And, as the Court already made clear, "[r]ace related statements standing alone will not suffice . . . rather, to sustain such a claim based solely on racial comments, the comments must be so commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." *Wiggins v. McHugh*, 900 F. Supp. 2d 1343, 1362 (S.D. Ga. 2012). Again, nonspecific and conclusory allegations such as "continuous" suffering of comments without any meaningful factual or temporal context don't suffice. In the end, Plaintiff failed to allege sufficient *facts* to show that her "working conditions [were] so difficult or unpleasant that a *reasonable* person in the employee's shoes would have felt compelled to resign." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).

To the extent Plaintiff contends that GEICO's lack of investigation of her first complaint to HR played any role in her resigning, her "subjective feelings about [GEICO's] response to her complaint [is] immaterial." *Williams*, 218 F. Supp. 2d at 1299.

---

[8] Although the Court's conclusion regarding the merits of Plaintiff's hostile work environment claim arose in the alternative—*i.e.*, it was not the primary basis for that claim's failure—the Court reiterates those findings to the extent it applies to Plaintiff's constructive discharge allegation.

Regardless, GEICO reassigned Plaintiff to another supervisor. [Doc. 3, ¶ 23]. That is a reasonable response to Plaintiff's HR complaints.

And, given that she complained, and GEICO moved her away from the offending supervisor, she certainly needed to provide some (or, *any*) details about these "interactions" with Story after the move that were so heinous that a reasonable employee would have resigned. She didn't do that. Plaintiff merely contended that she "continued to have to interact with Story," but she does not allege that GEICO knew of (or even that she reported) the continued interactions or continued problems with Story or even if there were any problems with Story at all. [*Id.* at ¶¶ 23–24]. Therefore, Plaintiff cannot claim that GEICO's failure to act somehow caused her resignation when they (1) acted reasonably, and (2) seemingly did not know of the continued comments. *See Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996) ("A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation."); *Jones v. USA Petroleum Corp.*, 20 F. Supp. 2d 1379, 1383 (S.D. Ga. 1998) ("Obviously an employer cannot be given sufficient time to remedy, for example, a hostile environment, if it is not provided notice of it.").

In sum, Plaintiff's Amended Complaint fails to state a claim for race discrimination under Title VII or § 1981.

## II.    Retaliation

The anti-retaliation provision of Title VII provides that "an employer may not

take action against an employee for bringing or aiding a Title VII charge." 42 U.S.C. §

2000e-3(a). In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court

held that this provision only protects an individual "from retaliation that produces an

injury or harm." 548 U.S. 53, 67–68 (2006). Therefore, it must be shown "that a

reasonable employee would have found the challenged action materially adverse,

'which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination." *Id.* "An employee's decision to

report discriminatory behavior cannot immunize that employee from those petty slights

or minor annoyances that often take place at work and that all employees experience."

*Id.* at 68 (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Again,

the relevant question is this: Do the allegations nudge Plaintiff's retaliation claim from

the "conceivable" category to the "plausible" one? *Twombly*, 550 U.S. at 570.

Here, Plaintiff contends that GEICO "subjected [her] to adverse employment

actions after [she] engaged in protected conduct by complaining of unequal treatment

on the basis of her race." [Doc. 3, ¶ 44]. Next, Plaintiff asserts "there was a causal

connection between the protected conduct and the adverse action." [*Id.* at ¶ 45].[9] Those

---

[9] Indeed, courts routinely require plaintiffs to at least "identify the causal connection" between the protected activity and an adverse employment action. *See, e.g., Cuyler v. Bay Pines VA Health Care Sys.*, No. 8:23-CV-347-WFJ-SPF, 2023 WL 5432297, at *3 (M.D. Fla. Aug. 23, 2023); *Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 742 (11th Cir. 2020) ("Henderson's first assertion of retaliation—that the City kept Newfield as his supervisor—fails because he has not alleged any facts that plausibly show the City took this action in retaliation for his protected activity. His second assertion of retaliation fails for lack of causation.").

allegations are "no more than conclusions," and are "not entitled to the assumption of truth." *McCullough*, 907 F.3d at 1333. Stripping away the conclusory allegations—which, to be clear, plagues much of Plaintiff's Amended Complaint—leaves no facts to suggest any form of causal connection between Plaintiff's HR complaints and her supposed constructive discharge.

Indeed, Plaintiff doesn't allege that Story's conduct got worse following the HR complaints. Nor does she allege that Story even knew about the conversations between Plaintiff and HR. Even more, Plaintiff's factual allegations imply that the retaliation she faced came from other coworkers—not Story. *See* [Doc. 3, ¶ 25 ("Ates was forced to resign given that the department made no attempts to protect her from Story's behavior ***or the retaliation of her coworkers***.") (emphasis added)]. But Plaintiff includes no factual allegations regarding what those coworkers allegedly did to retaliate against her for going to HR about Story.

To be sure, Plaintiff alleges only one adverse employment action—her constructive discharge. However, as discussed at length above, Plaintiff's Amended Complaint fails to state sufficient facts to support a constructive discharge employment action. And GEICO's alleged failure to investigate is not itself an adverse employment action. *See, e.g., Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). To top it all off, Plaintiff doesn't even allege that GEICO failed to investigate *in retaliation* for her HR complaints. In the end, GEICO tried to help by assigning Plaintiff

to a new supervisor. *See Laster v. Georgia Dep't of Corr.*, No. 5:21-CV-00464-TES, 2024 WL 4277838, at *15 (M.D. Ga. Sept. 24, 2024) (finding no retaliation where, among other things, the employer tried to "help make Plaintiff's plight better"). Plaintiff does not allege that this new supervisor retaliated against her, or even that Story retaliated against her. In truth, Plaintiff's Amended Complaint isn't clear at all who actually retaliated against her. *See* [Doc. 3, ¶ 25 ("Ates was forced to resign given that the department made no attempts to protect her from Story's behavior or the retaliation of ***her coworkers***.") (emphasis added)]. Who, you might ask, are those "coworkers"? Plaintiff's Amended Complaint doesn't give us the answer. Plaintiff's Amended Complaint just concludes that GEICO "subjected [her] to adverse employment actions after Plaintiff engaged in protected conduct by complaining of unequal treatment on the basis of her race." [Id. at ¶ 44]. That is not enough to sustain a retaliation claim and that claim is **DISMISSED**.

### III.   <u>Leave to Amend</u>

In a last-ditch effort to save her claims, Plaintiff's Response concluded with: "Should this Court find that [Plaintiff] has not sufficiently alleged her claims, she requests leave to amend her complaint." [Doc. 10, p. 11]. But, the Eleventh Circuit's precedent is clear: "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir.1999); *see also Rosenberg v. Gould*, 554

F.3d 962, 967 (11th Cir. 2009); *Johnson v. Oconee Ctr. Cmty. Serv. Bd.*, No. 5:24-CV-00208-TES, 2024 WL 4392378, at *7 (M.D. Ga. Oct. 3, 2024).

And, to be sure, GEICO's Motion put Plaintiff on notice of many of the pleading insufficiencies discussed in this Order—including that her Amended Complaint did not properly allege a hostile work environment claim. [Doc. 7-1, p. 4 ("[T]here is no hostile work environment cause of action actually delineated in the pleading.")]. Plaintiff could have sought leave to amend a second time instead of waiting on the Court to decide the Motion and asking for a redo in case the Court didn't rule with her. When faced with a motion to dismiss that relies on insufficient or improper pleading, no plaintiff can fight the motion on its merits and simultaneously ask the Court to give it a do-over to address those already disclosed pleading deficiencies if it loses the motion. No, a plaintiff has to pick a lane: leave the complaint as is and address the merits of the motion to dismiss or seek permission to amend the complaint and try to clean them up.

Since she didn't follow the appropriate procedures, the Court **DENIES** Plaintiff's request for leave to amend.

## <u>CONCLUSION</u>

In the end, Plaintiff's strongest possible claim—*i.e.*, the notably absent hostile work environment count—never found its place into Plaintiff's Amended Complaint. As for the claims she did include, Plaintiff didn't "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, the Court

**GRANTS** GEICO's Motion to Dismiss [Doc. 7] and **DISMISSES** Plaintiff's Amended Complaint [Doc. 3]. The Clerk of Court is **DIRECTED** to **ENTER** Judgment and CLOSE this case.

**SO ORDERED**, this 25th day of October, 2024.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**